The next matter on which we will hear oral argument is Brown v. Sage, I'll just refer to it by the single Sage name, counsel. Your honors, may it please the court, my name is Judah Bellow and I represent the appellant, Mr. Joseph Brown. I'd like to reserve two minutes for rebuttal. Granted. Now there are two reasons why this court should reverse the district court and allow Mr. Brown to file civil rights complaints in the form of pauperous. One, Mr. Brown did not have three strikes for filing his complaints. And two, in the Sage case, Mr. Brown was in immediate danger of serious physical injury. Let me stop you right there just to see what we can agree on. I'm assuming that there is no dispute that the dismissals in two other Eastern District of California Brown v. United States cases do constitute strikes. But there are two strikes out there. This whole case is about the profit matter and whether there is a third strike. Yes, your honor. Brown v. Profit was not a strike. This court in Byrd v. Shannon created what was later called the right line rule for when cases count to strikes. Because if Profit is a third strike, Brown had three strikes before the Sage matter was filed. That's correct, your honor. And the D's action as well and the appeals. Yes, your honor. In Byrd v. Shannon, this court created what was later called the right line rule for when cases count to strikes. One, the entire action must be dismissed. And two, the entire action must be dismissed explicitly as frivolous, malicious, or as failing to state a claim. Profit satisfies neither of these products. Profit was not a dismissal of Mr. Brown's entire action, but only a denial of his application to file in the form of pauperous. Both the title of the profit order as well as the district court's specific language only referred to a denial of Mr. Brown's IFP application. Right. And Mr. Balin, correct me if I'm wrong, but doesn't that mean, at least in the third circuit, that if an IFP motion is denied, then there's never a complaint filed? That's correct, your honor. No civil action has been initiated, if that's the case. That's correct. Mr. Brown's action had not been brought for purposes of 1915G under the third circuit's precedent. Brought is an important word in this equation. Correct. That's the language 1915G uses. But our equation, then, is brought the same as filed. Your honor, in Gibbs v. Ryan, this court said that the plaintiff's complaint was filed and his action was brought for purposes of 1915G only when his motion to proceed in form of pauperous was granted. However, even if his action was brought, profit cannot count as a strike because, again, this was not a dismissal of Mr. Brown's entire action. Couldn't that, from a policy perspective, create sort of a perverse incentive? I mean, couldn't then prisoners just keep sending stuff to the courts with a preliminary review, and if one gets through, great. If not, just keep sending? Your honor, again, the third circuit has interpreted the term brought as initiating, in terms of initiating a suit. And under that logic, these prisoners have not initiated suit. This is just a preliminary review using the third circuit's two-step test. But my point is, can't they use the statute as sort of a shield and just say, hey, I have this IFP application, and if the court doesn't like it, they'll just file one next week, too? Your honor, this court in Congress wanted to make sure that prisoners could file complaints alleging serious civil rights violations. True, but they also didn't want them filing a lot of frivolous ones. That's correct, your honor, and that's why 1915G has a three-strikes rule. Well, isn't there another policy concern here that cuts the other way? And again, correct me if I'm wrong, but if we were to determine this was a third strike, we would be doing that based upon what was decided by a court in another circuit, based upon that circuit's jurisprudence. Is that right? That's correct, your honor, because under this court's precedent, this would not count as a strike. Under this court's precedent, it would not. So if we go another route, then what we open up as a possibility, perhaps probably more than a possibility, is that the third circuit, rather than following its own precedent, is going to look to whatever the precedent of various other circuits are to determine whether or not this is a strike. Is that good legal policy? That's not, your honor, and that's not what this court has done in two non-precedential opinions. In just January of this year, in the Radbush v. Bittner case, this court looked to its own precedent to determine that a case coming out of the Western District of Virginia was a strike. In 2014, in the Parks v. Samuels case, this court looked to its own precedent to determine that cases coming out of the Sixth Circuit and the Eastern District of Kentucky, Eastern District of Virginia, and the District of Columbia were not strikes. I looked at Bradbury-Shinn for that as well. This is also the precedential approach of the D.C. Circuit and the Tenth Circuit. They look to their own precedent to determine whether cases that have emerged in other circuits count as strikes under their own law. And further, given this court's strong and specific concern over precision and the endless litigation that might crop up over the meaning of a strike, and the court articulated that concern in both the Milhouse cases and in the Bird v. Shannon cases, Third Circuit law governs here. You've cited Parks v. Samuel, and we all know that you're free to cite it. It's not precedential. Therefore, we don't have to follow it. But we aren't permitted to consider the reasoning that's applied in any case. What's the reasoning in Parks that you would suggest that we follow? The court didn't explicitly justify why it relied on its own precedent. It sort of said we are relying in part on our precedent in Bird v. Shannon and Baldy v. Miglio, sort of as a matter of course. And again, that makes sense given the specific concerns of the Third Circuit, as outlined in both Bird and Milhouse, that its own law should govern. And also, given that this prisoner was imprisoned in Pennsylvania, was filing his complaints in Pennsylvania, and otherwise Third Circuit law applied to him, it makes sense that Third Circuit law should govern here. So it's really just a two-step process, right? There has to be a ruling that, in form of paporus, can be granted and the complaint filed. That's correct. That's it. That's correct, Your Honor. Very simple. Now, that's all under, is it Section 1915G? So 1915G contains the three-strike rule, and this court has articulated that two-step process. Based on the rule. Correct. So how is it that California can get it so wrong? That's a great question, Your Honor. I mean, if the procedure is set out in the statute. So I would say two things. So, one, California has what it calls a very flexible approach to determining when cases count as strikes, and for that reason has said that dispositions such as the Profitt case can count as strikes. I should also add that California, excuse me, that the Central District of California has created a new form that allows courts to more explicitly There's a new form since what appears as JA 59? That's correct, Your Honor. We have copies of that. Because what I wanted to ask you, and I think you may be getting ahead of me, most people are, the form that is in the record that was used in this case tends to collapse the two inquiries, doesn't it? That's correct, Your Honor. In fact, it's titled, order Ray Leaf to file action without prepayment of full filing fee, which sounds on its face to be nothing but an IFP order, and yet the second part of it invites the court to consider merits considerations on the complaint itself, which is precisely what happened in this case. That's correct, Your Honor. And under Third Circuit precedent, this would be inappropriate. This would be an inappropriate disposition. So what's the new form say? The new form, and we have copies of it here for you, but it gives the district court the option to explicitly dismiss the case. And in the Profitt order form, the district court can only, or it only denied his application to file in form of progress and said nothing about the entire action. And moreover, Your Honor, at the very least, if one wishes to consider this a dismissal, it's an ambiguous dismissal. It has to be clear in the Third Circuit. That's correct. That it's inappropriate. Explicit. Exactly. And that it is not up to this court to undertake what the court has called a detailed analysis as to what the district court might have really meant. Mr. Brown was also in imminent danger in the Sage case due to his untreated PTSD. This court uses a liberal standard of review when evaluating pro se allegations of imminent danger, and these allegations need not be concrete. In this case, Mr. Brown had a diagnosis from a Veterans Affairs psychiatrist diagnosing him with chronic PTSD, warning that this chronic PTSD caused him to undervalue threats that would lead to serious injury or death. The psychiatrist recommended group therapy and psychiatric medication, and the record does not show that Mr. Brown's PTSD was treated. This is an alternate argument on your part, isn't it? I'm sorry? This is an alternate argument to show that he does not have a third strike, is it? No, Your Honor. This is to show that even if he does have three strikes, in the Sage case, he still should be allowed to file in form of pauperism. Even if he has a third strike. That's correct, Your Honor. Even if he does not have a third strike.  We don't reach this argument, Your Honor. That's correct, Your Honor. Okay. And for that reason, given that he was not provided that treatment, his allegation was implicit, especially given this court's liberal standard of review. And for that reason, this court should allow Mr. Brown to file his IFP, excuse me, allow him to file his complaints in form of pauperism. Thank you very much. Thank you, Your Honor. Mr. Butler. May it please the Court, Michael Butler on behalf of the federal appellees only in Kenmore. The other federal officials are on their own. Your Honor. I'm sure that is rather disconcerting to them. No, maybe it would be of benefit to them. Based on the upward climb I think I have today. Based on your questions, Your Honor, I don't know why you'd say that, Mr. Butler. Let's start with, if we could, because you have had either the advantage or disadvantage of having heard our questions of your adversary. Let's start with Gibbs v. Ryan. I think Judge Becker wrote that opinion. Hasn't it been clear in the Third Circuit since 1998 that the complaint isn't filed until a determination is made regarding the inmate's indigency? And that's where I wanted to start, Your Honor, because you asked us the question whether or not this was brought and whether or not this was filed. We believe that the complaint was brought under 1915G and it was constructively filed under 1915G. You have to look at Milhouse. Last year in Milhouse, the court went away from that Griggs language. The Milhouse decision actually relied on brought and it relied on O'Neill v. Price. I think the court specifically cites O'Neill v. Price in that decision and says it is brought when the inmate brings the IFP petition to the court. That's when this applies under 1915G. Well, it looks like O'Neill supports your argument, but I don't think we adopted that case. Didn't we just cite it? Well, if you look at it, if you look at that decision, it appears it's fairly clear that you're looking at that word brought in that context. In Griggs, you're looking at the Black's Law Dictionary, which I would argue is not the plain language of the statute. In O'Neill and in Milhouse, you're looking at the Webster's Dictionary, which is the physical act of what the inmate's doing. And I want to explain why that's so important because we're talking about this two-step process. That's not followed in the Middle District of Pennsylvania. In the Middle District of Pennsylvania, in this case, in the Burr case, the first docket, the complaint's filed. The second docket number, IFP petition is filed. In the Eastern District, in the Western District, and sometimes in the Middle District, they do this application and then they direct the clerk to file the complaint. That's not all the time. So what matters? How the clerk in the Middle District of Pennsylvania dockets matters or what the Third Circuit says in its precedential opinion? In Griggs, it wasn't precedential. In Griggs, that was dicta. When I refer to precedential opinions, I'm referring all the way back to Gibbs and to Byrd v. Shannon and Milhouse and the cases we've been talking about. And I don't believe that no court has ever said that they're holding that the word brought under 1915G means that you file the complaint. The court in Griggs said, we must decide the narrow question of whether a district court may apply 1915G to revoke IFP, that have been granted a positive enactment of the PLRA. I didn't even interpret the word brought. You're interpreting it as a physical action? Exactly. As well, presenting it to the court. It's the clear intent of Congress that when an inmate presents a complaint, that the court will review it. What we're looking at is what Mr. Brown wants us to do. But you're accepting that there has to be a determination of IFP first. In form of paporus, you have satisfied the judge that you can proceed in form of paporus. And the second aspect is the complaint has to be brought. But in your argument, you're saying that means physically carried or sent by mail? Not physically carried, Your Honor. So if Your Honor's asked us to look at the Eureta case, which Your Honor decided when you were in the Western District. In that case, you asked us to look at footnote number four. I was never in the Western District. I was talking to Joe Smith. He was deprived. And footnote number eight. Take a look at footnote number eight, which is important to this case. In footnote number eight, they cite the McDowell v. Delaware State Police case. In that case, the court said for statutes of limitation purposes to protect the inmate, the complaint is constructively filed when the inmate presents the IFP petition to the court. So the language in the case law, it seems to be evolving that the broad language is when the court is either the IFP or the complaint. It's what the inmate is actually doing. When we're relying on so let's just say the clerk. If we say and have said that the term brought means filed. We said that in dicta. And as I remember from being a law clerk, it's not what the court says, it's what the court does. And so if you're relying on the clerk filing the document, the language of the statute is what the inmate does. The inmate is the one that's bringing the complaint, is bringing it. When you're relying on whether or not we grant IFP, that's whether or not the clerk, the court, directs the court to file the complaint. The inmate has no involvement in that. The language is actively what the inmate is doing. The inmate is bringing the complaint to the court. So 1915G is fairly simple. It's the inmate is presenting a complaint to the court, and he's presenting that complaint to have the court review it. And it reviews it in maybe one step, maybe two steps. In the Ninth Circuit, they do it in one step. You know, it's interesting. This particular very specific issue, we haven't decided yet, but the Ninth Circuit has. Do you happen to know, it's surprising there's no more decisions on this out there. Do you know what the practice is out there? I mean, you're with the Department of Justice. So in the Central District, just like- Not even in our circuit. I've been in the whole country. I mean- I think it's the thing, well, I only practice in the Middle District, so I don't know the entire country. But I looked at the California. I called California, and I said, what are you doing? They said, this is how we use this form. We look at the entire package, and we deny it on the same, on these reasons. And I would disagree that that is ambiguous, that form. I think the form is, the magistrate judge is very clear, and there's a checkmark for denial. That's an adoption. Judge Rambo believed that was an adoption. I think Mr. Brown believed that was an adoption because he marked that it was a strike in one of his cases. So I don't think that there's any ambiguity, and I think it applies to Berg. Berg applies to the Ninth Circuit. I'm trying to think this out. They must be loaded with paperwork, based on your theory, that broad doesn't mean file. So an inmate can keep filing, not filing, bringing actions in California. The judge can say, well, no, this doesn't look good. I'm not going to file it. So I could see an endless stream of applications under that system. I think one of the things, look at the Middle District. We have so many prisoner cases. My entire life has been on prisoner cases. It keeps me in business. But if you look at 1915A, 1915A asks the court to review the complaint before it is docketed, before it's docketed. And then in that review process, the court may say, well, no, this doesn't present a proper theory for proceeding. We're going to reject it. Reject it. And then another one comes. Right. It seems to undercut the purpose of the three-strike rule. Well, I don't think so, because let's look as if this two-part process happens. In a perfect world, if the court says, you've reached the poverty level. We're going to grant this IP petition. Then the complaint is reviewed. But let's just say the court says, you know what, you didn't meet the poverty level. We're going to deny this. We're going to give you time to present the filing fee. Then the court's going to say, well, in 1915A, we have to review the complaint. Let's start where one always should begin in a case that involves a statute, and that is with the text of the statute. Look at subsection G. And shouldn't we rather, don't we have to read that subsection? And the structure of the sentence, looking at brought in connection with the word dismissed. The use of the word dismissed following brought necessarily assumes that what was brought was filed. Right? I mean, you can't dismiss a complaint. You can't dismiss an action or appeal unless the complaint's been filed. Right? Then 1915A is superfluous. Why have 1915A? I don't know. I'm not talking about A. We're dealing with G. Well, 1915G is... How can you dismiss an action if a complaint has not been filed? Well, you can... For purposes of subsection G. I think you could say that it's been constructively filed, as they did in McDowell v. State Police. I think... Is constructively consistent with what we've said in our cases? I believe so. Since we have required action by a court that's explicit and clear? When you have McDowell and you look at it, McDowell's protecting the inmate. McDowell's like, okay, if you file this by this particular date, if you file your application for IFP, we're going to protect you versus the statute of limitations. We're going to say that's been filed, even if the application's been dismissed or denied. We're also looking at the word brought as an active term that what the inmate does. When you're looking at filed, the inmate's not filing the complaint. The clerk of court is filing. You're directing the clerk of court as the judge to file the complaint. So when that happens, the clerk of court is doing the action. The claim meeting, the statute, is what the inmate is doing. He's presenting his complaint to the court, and the court is then looking at it to determine whether or not it's frivolous, fails to state a claim. And when they do that, the court's looking at that in that entire process. They're determining whether or not this case should be dismissed based on that particular process. I don't dispute much, maybe even all of what you just said. It still doesn't address the question that I asked that is focused on the plain language of this statute. Dismissed assumes that brought has included filing. But, Your Honor, the courts in the IFP applications, they do dismiss these complaints without filing a complaint. They deny the application for IFP. And then there cannot be a filing unless you ante up the money. But if the court... I mean, what you're saying is precisely what we have and what is problematic in the Eastern District of California here. And that was the fact that the two inquiries were conflated. Well, I think they did that because they can. The court's dismissing... Well, this panel can do anything it wants to, but I suggest often that we not. We instead adhere to a rule of law. But I think that when they're dismissing the complaint, the court and Profitt dismissed the complaint. They looked at the complaint, and they determined that it failed to state a claim. The court, in fact, says that it failed to state a claim. It's a privilege. It may constitute a strike on the 1915... Well, that was the magistrate judge of fairness, right? But the court adopts it. I mean, you can't... No, I don't know. I mean, the bottom... That's the problem with this form. It is problematic. And the bottom says it's a granted or denied with respect to the prepayments. And the top says, as I read earlier, that it's simply an order addressing the IFP state. And there's no analysis about the economic situation, Mr. Brown. The court is... If you find it, that's ambiguous. There's nothing I can tell you that it wouldn't be. But the magistrate judge writes comments about why the complaint's deficient. It checks four or five boxes saying that it's so deficient. It's frivolous. It's a 1915 G strike. And the court hits the deny button. When a district court judge adopts a decision, if it goes against the magistrate judge, it's going to write an opinion. It's going to say why it differs. It's not going to just deny it for a different reason. If it did, then there would be lots of appeals because the district court judge has got to give explanations as to why it would differ. And that denial is an adoption. And that's why the California courts did that. If you disagree, then there's nothing I can say. I mean, I can't defend the form. But to us, to Judge Rambo, to Mr. Brown, it seems clear. Thank you. Thanks very much, Mr. Butler. Mr. Balin, rebuttal. Your Honor, what matters is what the court says and not the procedure that's followed by the clerk's office. And this court's precedent for over two decades is that an action – what this court's precedent said for over two decades is that actions have not been brought for purposes of the court's decision.  Unless the IFP motion has been granted. And my opponent pointed to Milhouse v. Heath. The court in Milhouse did not adopt the Ninth Circuit's O'Neill reasoning there. The court, in fact, said that we have indicated when a litigant submits a complaint with an IFP motion, the complaint is duly filed after the motion to proceed. IFP has been granted. And this court has relied on the understanding of brought as initiating, as I've mentioned. Not, as the Ninth Circuit has, that when a plaintiff submits the complaint, that that counts as – But nonetheless, why did the statute – I mean, we like to read these things pretty strictly. It says brought. Why did Congress just say filed? Well, it says brought with respect to the civil action. So when a plaintiff brings a civil action, when they file an appeal, why did Congress only say bring? I'm not sure, Your Honor. However, this court has consistently understood brought as initiating. And initiation can't happen. One cannot initiate a suit if they haven't been given leave to file in the form of paupers. And my opponent argued that the case was not ambiguous. However – Let's stop there. Let's, again, return to the text of the statute. Does it matter that the use of the word brought is in connection with an action, not a complaint, not an application for infomer paupers status? Not under this court's precedent. Again, as the court stated clearly in Gibbs and elsewhere, an action, the entire action, has not been initiated until – There is no action unless a complaint has been filed. Well, yes, and the complaint hasn't been filed until the plaintiff has been granted leave to proceed in the form of paupers. Unless he's paid the filing fee. Yes, or has paid the filing fee. It almost happens simultaneously. I mean, once the court says, okay, you can proceed in the form of paupers, that almost means your complaint is going to be accepted. Is that accurate? Once the court says, okay, your application to proceed in the form of paupers is granted, you can proceed. That's correct. Doesn't that mean that the complaint will be filed almost immediately? Again, Your Honor – We're talking about a physical step. Right. The complaint is often filed together with an application to proceed in the form of paupers. That's right. And the court can accept it right there. It can proceed in the form of paupers. The prisoner is not going to file that complaint. The court is. And the court already has the application. So are you saying that, let's say a prisoner proffers an IFP application and a complaint, the first step is purely, can this person pay? Correct. If that's it, then it goes through. Yes, that's a two-step rule as articulated in the Roman V. Jeffs case. The first step is indigence, and the second step is the merits of the complaint. So there's no consideration in that, I guess, the first step as to whether this is – No, Your Honor, this court has stated that it is an entirely separate step from the question of the merits of the complaint. Okay. Thank you very much. Thank you, Mr. Balin, Mr. Butler. And I do want to acknowledge the service of appointed counsel, that is, the attorneys from Deckard. But in particular, Mr. Balin, who is a student at Penn Law School, I understand. What year are you in? I just graduated. You just graduated. All right. Then you're no longer a student. I guess that's a good thing. So do you have to go study for the bar right now? That's right. Get out of here and get back to work. Thank you. Thank you, gentlemen, very much.